854 So.2d 856 (2003)
STATE of Louisiana
v.
Derek TEMPLE.
No. 2002-K-1895.
Supreme Court of Louisiana.
September 9, 2003.
*857 Richard P. Ieyoub, Attorney General, Eddie J. Jordan, Jr., District Attorney, Donna R. Andrieu, Catherine L. Bartholomew, Counsel for Applicant.
Sherry Watters, New Orleans, Counsel for Respondent.
*858 JOHNSON, Justice.
We granted this writ of certiorari to determine whether a search of defendant's female companion, which led to the discovery of contraband and defendant's subsequent arrest, was constitutional pursuant to the Fourth Amendment to the United States Constitution. After a thorough review of the record and the applicable law, we find that the contraband was seized without probable cause and should have been suppressed by the trial court. Accordingly, we affirm the decision of the court of appeal.

FACTS AND PROCEDURAL HISTORY
On October 18, 1996, at approximately 11:30 p.m., New Orleans Police Department officers Christopher Davis and Patrick Garner responded to a call of an attempted burglary in the 600 block of Felicity Street in the St. Thomas housing development. The victim of the alleged burglary attempt informed the officers that four individuals had attempted to enter her apartment without her permission. Officer Davis testified that he and Officer Garner canvassed the front and rear of the apartment building and observed four individuals sitting on a porch step. Officer Davis testified that he noticed that one of the individuals "quickly leaned against the wall" when he saw the officers. According to Officer Davis' testimony, he, Officer Garner, and a third officer, Officer Hudson Cutno, "formulated a plan to try to stop the persons to interview them for, ah, interview purpose or whatever ...." Officers Davis and Garner approached the group from one side of the building, and Officer Cutno approached the group from the other side.[1]
Upon seeing the officers, the only female in the group, Christine Johnson, sat down and defendant, Derek Temple, sat down next to her. Officer Davis testified that he observed defendant hand Johnson a white object, which Johnson quickly placed in her pocket and attempted to walk away.[2] At that point, all four individuals were detained by the police officers.
The officers subsequently called for assistance so that Johnson could be searched by a female officer.[3] Officer Lizell Brooks responded to the call and conducted a "pat-down" search of Johnson's person. Officer Brooks ultimately seized 141 pieces of rock cocaine and 60 bags of powder cocaine from Johnson's pocket. All four individuals were transported to the Sixth District station.
Officer Davis stated that upon their arrival at the station, Johnson told police that defendant had given her the object and told her to "hold it for him." Johnson and the other two subjects were not charged with any offense.
On February 6, 1997, the state charged defendant with one count of possession of cocaine with intent to distribute, in violation of R.S. 40:967(B)(1). On April 7,1997, the trial court denied defendant's motion to suppress the evidence and Johnson's statement. On April 30, 1997, a jury found defendant guilty as charged. Thereafter, *859 the state filed an habitual offender bill, and on September 10, 1997, the trial court adjudicated defendant a fourth felony offender. On November 7, 1997, the trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence.
On appeal, counsel raised the sole issue of denial of motion for continuance,[4] but the court of appeal determined that no such motion had in fact been requested and thus, dismissed defendant's appeal for failing to assert any assignments of error for review. State v. Temple, 98-0571 (La. App. 4th Cir.6/30/99), 739 So.2d 1028 (not designated for publication). Subsequently, by order of the Fourth Circuit, the trial court granted defendant an out-of-time appeal on June 30, 2000.
Thereafter, the Fourth Circuit reversed defendant's conviction and sentence based on its determination that the officers did not have reasonable suspicion to stop and search the subjects, and thus, found that the trial court had erred in denying defendant's motion to suppress. State v. Temple, 01-1460 (La.App. 4th Cir.6/19/02). Following this adverse ruling, the state sought review in this Court. By order dated January 31, 2003, this Court granted the state's writ application. State v. Temple, 02-1895 (La.1/31/03), 836 So.2d 55.

DISCUSSION
The question of whether the evidence was properly admitted at defendant trial turns on two key factors: (1) whether the police officers had reasonable suspicion to make an investigatory stop of defendant and the other individuals sitting on the porch, and (2) whether the police officers had probable cause to search the individuals.
Although La.C.Cr.P. art. 215.1 permits an officer to stop a citizen in a public place and question him, the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899 (1968); State v. Andrishok, 434 So.2d 389, 391 (La.1983). If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La. C.Cr.P. art. 215.1(B). Determining whether "reasonable, articulable suspicion" existed requires weighing all of the circumstances known to the police at the time the stop was made. State v. Williams, 421 So.2d 874, 875 (La.1982).
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular *860 person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest.
In determining whether the police possessed the requisite "`minimal level of objective justification'" for an investigatory stop based on reasonable suspicion of criminal activity, Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the `totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.' " United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); see also State v. Huntley, 97-0965, p. 1 (La.3/13/98), 708 So.2d 1048.
In reviewing the totality of circumstances, the reputation of an area is an articulable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of reasonable suspicion. State v. Buckley, 426 So.2d 103, 108 (La.1983) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). The assessment by a reviewing court of the cumulative information known to the officers avoids a "divide-and-conquer analysis" by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear "readily susceptible to an innocent explanation." Arvizu, 534 U.S. at 274,122 S.Ct. at 751.
At any rate, cases have held that the pertinent facts and circumstances must be articulated, i.e., testified to in court by law enforcement officials. For example, in State v. Hughes, 99-2554 (La.App. 4th Cir.5/31/00), 765 So.2d 423, writ denied, 00-1981 (La.6/1/01), 793 So.2d 179, the Fourth Circuit reversed Hughes's conviction for possession of crack cocaine in a case in which the officers observed Hughes place something white in his pants pocket, then hurry into a nearby grocery. The officers neglected to testify that the area around Olive and General Ogden streets was known or drug-trafficking. One officer conceded that he based his belief that Hughes was involved in drug activity upon his "19 years of experience as a police officer." The appellate court found this was little more than a hunch, and ruled that the state failed to elicit adequate information from the officers for a finding of reasonable suspicion to support the detention of Hughes. Hughes, 99-2554 at 6, 765 So.2d at 426-27.
Similarly, in State v. Ellington, 96-0766 (La.App. 4th Cir.9/4/96), 680 So.2d 174, the appellate court affirmed a judgment granting a motion to suppress. There, the police officer testified that he saw the defendant standing in an area known for high drug activity, and, upon seeing the marked police car, the defendant put his hands in his pocket as if attempting to conceal something. Thinking that this activity was suspicious and that the defendant was trying to conceal something in his pocket, possibly drugs, the officer stopped the defendant and conducted a pat-down search.
*861 A folding knife was found in the defendant's right rear pants pocket. The officer then shined a flashlight into the same pocket and found a glass vial containing cocaine residue. The Fourth Circuit found that the "particular facts" as testified to by the officer were not sufficient to justify the stop of the defendant. Further, the officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object, which the defendant attempted to conceal. Finally, the Fourth Circuit stated that even if the initial stop was justified, the subsequent pat-down frisk of Ellington was not because La.C.Cr.P. art. 215.1 only allowed a frisk of outer clothing for a dangerous weapon. Ellington, 96-0766 at 3, 680 So.2d at 176.
Likewise, in State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993), the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away." The officers also saw him "fooling with his belt area." The trial court denied the defendant's motion to suppress the pipe that the officers seized after Williams was stopped and frisked, but the Fourth Circuit reversed the trial court's ruling, finding that these facts did not justify the initial stop of the defendant, and even if the stop was legal, the officers provided no evidence to justify the subsequent pat-down frisk. Williams, 621 So.2d at 201.
In this case, the record does not support a conclusion that the police officers believed that they had just witnessed an illegal drug transaction when they observed defendant placing a white object into Johnson's pocket, nor was there an exchange of the object for money. Thus, the appellate court found that the officers lacked reasonable suspicion for the stop based on the ambiguous observations of the officers. We agree.
The Fourth Amendment to the United States Constitution protects American citizens from unreasonable searches and seizures, including the persons who socialize on steps and street corners in urban America. Reasonable suspicion for a stop is more than "looking nervous" and sitting on a porch step in a "high crime area." As noted above, the police officers came across the four individuals in question while investigating a call of an attempted burglary. Nothing in the record establishes that the officers had a reason to focus on these individuals. The alleged victim of the alleged attempted burglary did not provide the officers with a description of the persons who had attempted to enter her apartment. Thus, there was no suspicion that the individuals herein were even involved in that crime or any other wrongdoing. We must presume that citizens are law abiding, even those in public housing developments and other targeted high crime areas.
Moreover, nothing in the record establishes probable cause to search any of the individuals, much less the inside of Johnson's pocket. The court of appeal found that even if the initial stop were legal, the officers lacked any basis to believe that Johnson was armed. Accordingly, the court concluded that the subsequent pat-down search of Johnson violated the Fourth Amendment. Temple, 01-1460 at 6. The court noted that Officer Brooks did not testify that the object she felt in Johnson's pocket was readily identifiable as contraband and thus the seizure did not fall into the "plain feel" exception to warrant requirement. Id. at 8. Finally, the court concluded that Officer Brook's search of Johnson was not authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899 (1968), or by any exception to *862 the warrant requirement, and the seizure of crack and powder cocaine was unconstitutional. Likewise, the court held that Johnson's statement implicating defendant also should have been suppressed. Id.
We agree. During their testimonies, none of the officers expressed a concern for their safety which would justify a protective frisk. However, even if the pat-down was justified, none of the evidence indicates that the content of Johnson's pocket was readily identifiable by its "plain feel." In State v. Broussard, 00-3230, (La.5/24/02), 816 So.2d 1284, this Court applied the "plain feel" exception to the warrant requirement recognized in Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). Quoting Dickerson, this Court stated:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
Broussard at 1289. In Broussard, unlike the instant case, the officer testified that based on his knowledge and experience as a narcotics officer, he knew that narcotics and firearms have a known association. The Court found that the officer's expression of concern for his own safety and that of the other officers provided an articulable basis for a protective frisk. The officer stated that during that pat-down, he felt lumps and heard the crinkle of plastic from Broussard's pocket, which he knew from his years of experience to be consistent with drug packaging of crack cocaine. Thus, the Court held that the evidence was obtained by lawful means. Broussard, 00-3230 at 7-8, 816 So.2d at 1288-89.
Officer Brooks' testimony is completely devoid of any description of her pat-down of Johnson and of any perceptions she may have had during that pat-down. There was no statement that the officer saw or felt any lump or that she heard a crinkle of plastic coming from Johnson's pocket. Officer Brooks' testimony added nothing upon which to support a "plain feel" exception. To the contrary, it is apparent that the officer conducted a focused search inside the specific pocket, presumably after being informed of the location of the white object by the officers present at the scene.
Moreover, there is nothing to justify a search of the individuals' persons incident to a lawful arrest, as the facts do not give rise to probable cause to make an arrest. As a general matter, police officers may make warrantless arrests if probable cause exists, that is, "when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime." State v. Cojoe, 01-2465 (La.10/25/02), 828 So.2d 1101, 1104; State v. Marks, 337 So.2d 1177, 1182 (La. 1976) (citing Beck v. Ohio, 379 U.S. 89, 90, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)); La.C.Cr.P. art. 213. Whether probable cause exists to arrest a suspect is determined under the totality of the circumstances known to the officers at the time of the arrest. State v. Moreno, 619 So.2d 62 (La.1993).
In this case, Officer Davis testified that while standing twenty feet away from the individuals in question, he observed defendant place a white object into Johnson's hand or pocket. The officer admitted that he could not tell that the white object was contraband at the time of the *863 observation. Furthermore, prior to the female officer's arrival on the scene, the officers had searched the three males and had found no weapons, drugs, drug paraphernalia, large amounts of money, beepers, or any other items indicative of drug activity. Thus, given the totality of the circumstances surrounding the search and seizure, the officers did not have probable cause to arrest the individuals and to search them incident to an arrest.

CONCLUSION
For the reasons outlined above, we find that the contraband was seized without probable cause and should have been suppressed by the trial court. Accordingly, we affirm the decision of the court of appeal.
VICTORY, J., dissents and assigns reasons.
TRAYLOR and WEIMER, JJ., dissent for the reasons assigned by VICTORY, J.
VICTORY, J., dissenting.
I dissent from the majority opinion because, in my view, the police had probable cause to arrest both defendant and his female companion, and therefore the search was valid. Giving due deference to the skill of a trained police officer in the context of the other circumstances known to the officer, including the lateness of the hour, the high crime character of the area, the nervous demeanor of the group of four individuals, defendant's abrupt movement to the wall, his immediate seating himself beside Johnson, his furtive placement of a white object into her pocket, followed by their attempt to walk away, the evidence was sufficient to put a trained officer on notice that, more probably than not, a crime had just been committed in his presence, i.e., possession and/or distribution of drugs.
Further, contrary to the majority's finding that "the record does not support a conclusion that the police officers believed that they had just witnessed an illegal drug transaction when they observed defendant placing a white object into Johnson's pocket," Op. at 861, Officer Davis testified at the hearing on the motion to suppress the evidence that he believed the white object was contraband. He testified that from a distance of 20 feet away, he observed defendant hand Johnson a white object. He elaborated:
A: When she quickly satwhen she sat down, he quickly sat next to her, went inside his pocket, gave whatever the contraband was to her, and then she attempted to walk away.
Q: And so she put ithe gave it to her in her hand?
A: Sheno, it wasn't in her hand. They were sitting next to each other. When he took the object out of his pocket, I noticed it was a white object. Put it inhe then put it in her pocket, helped her put it in her pocket, whatever.
After hearing this testimony, the trial judge was satisfied that the officers had reasonable suspicion to conduct an investigatory stop of the subjects, which led to the discovery of the drugs. The trial court obviously credited Officer Davis to mean that he believed the white object to be drugs, especially when he referred to the object as contraband, as the court denied the motion to suppress the evidence without hesitation and without objection from defense counsel. Accordingly, as shown by Officer Davis's motion hearing testimony, Officer Davis had probable cause to arrest upon seeing defendant place what *864 he believed to be contraband drugs in the pocket of Johnson.[1]
Thus, under these circumstances, having witnessed what he believed to be a crime, Officer Davis was justified in arresting the subjects and conducting a search, incidental to that lawful arrest. See La.C.Cr.P. art. 213(1) (An officer may make a warrantless arrest when the person to be arrested has committed an offense in his presence).
For the above reasons, I respectfully dissent.
TRAYLOR and WEIMER, JJ., dissent for the reasons assigned by VICTORY, J.
NOTES
[1] Officer Cutno did not testify at the motion hearings or at trial.
[2] On cross examination, Officer Davis testified that defendant took the object out of his pocket and "put it in [Johnson's] pocket, helped her put it in her pocket, whatever."
[3] At trial, Officer Brooks testified that male officers "tend not to want to touch females because of complaints." In fact, deference of male police officers to female officers in conducting the frisk of female suspects appears a common, if certainly not exclusive, practice throughout the country. State v. Adams, 01-3231 (La.1/10/03), 836 So.2d 9.
[4] On April 30, 1997, during a break in jury selection, the trial court put the following information on the record:

At 9:22 a.m., with jury selection already under way ... Ms. Vix [defense counsel] had asked for a bench conference. The purpose of the bench conference was to indicate to the Court that a note had been just given to her that Mr. Harry Boyer, a private attorney, was on the telephone indicating that he had been retained, just retained by the family, apparently, of this gentleman and wanted to know if this case would be continued. The Court advised Ms. Vix to tell Mr. Boyer that the Court would not allow the case to be continued at this late hour with jury selection already under way. I had never heard from Mr. Boyer or from anyone else indicating that they wouldthey, he or Mr. DeSalvo, his law associate, were going to come to this courtroom in this case at any hour, and more particularly not at 8:00 o'clock in the morning when everyone knows, including those gentlemen, that this court begins. (Tr. dated 4/30/97 at 34).
[1] Further, although the officers did not testify as to the details of the search at trial, Johnson gave a statement at police headquarters that, when Officer Brooks arrived to search her, she told Officer Brooks that defendant had put something in her pocket, whereupon Officer Brooks searched her pocket and seized the drugs.