895 So.2d 542 (2005)
STATE of Louisiana
v.
Samuel BROWN.
No. 2003-KA-2155.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 2004.
Rehearing Denied March 31, 2005.
Eddie J. Jordan, Jr., District Attorney, Claire Adriana White, Assistant District Attorney, Gregory M. Thompson, Law Clerk, New Orleans, LA, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
*543 (Court composed of Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
Defendant/appellant, Samuel Brown, pleaded guilty to attempted possession with the intent to distribute cocaine and of being a felon in possession of a firearm, reserving his right to appeal the trial court's ruling on the motion to suppress the evidence in accordance with State v. Crosby, 338 So.2d 584 (La.1976). After review of the record, the applicable law, and the appellant's arguments, we affirm the judgment of the trial court.

Procedural History
The appellant was charged on March 24, 2000, with one count each of possession with the intent to distribute cocaine and being a convicted felon in possession of a firearm. On March 13, 2001, he was arraigned and pleaded not guilty. After a hearing, the trial court denied appellant's motion to suppress the evidence May 21, 2001.[1] After withdrawing his former pleas, the appellant entered Crosby pleas on August 22, 2002, to attempted possession with the intent to distribute cocaine and to being a felon in possession of a firearm.
The appellant was sentenced on both counts to serve ten years at hard labor. After the State filed a multiple bill as to the first count, alleging the appellant was a second offender, the defendant pleaded guilty to the bill, and the court vacated the sentence as to the first count only, imposing another sentence of ten years at hard labor to be served concurrently with the sentence on the firearm count. The appellant's motion for out-of-time appeal was granted on October 15, 2003, the record was lodged in this court on December 11, 2003, and the appellant filed his brief on January 5, 2004.

Discussion
At the first suppression hearing, Off. Eric Gillard testified he and fellow officers were stopped by a woman as they walked out of Central Lockup four or five days before the defendant's arrest. The woman told them a man named "Sam" was selling drugs in the 3200 block of Gravier Street. The woman indicated she lived in the neighborhood, and Sam had threatened both her and other neighbors. Off. Gillard testified he gave the woman his card. Thereafter, on February 19, 2000, the woman called him to tell him Sam was again selling drugs in the block. Off. Gillard met her at a nearby fast food restaurant, and she described Sam as approximately 6'2" tall, weighing 160-180 pounds, and wearing braids.
Off. Gillard stated that another officer set up a surveillance of the 3200 block of Gravier, and this officer observed two suspected drug transactions involving a man matching the description given by the informant, one involving someone in a car and the other involving a pedestrian. The officer informed Off. Gillard and other officers of the takedown team that in each case the suspect retrieved something from a white Chevrolet Cavalier which was parked in the 3200 block of Gravier. Off. Gillard testified he and other officers drove into the block and saw a man, who matched the description given by the informant, sitting on the steps of a house at 3215 Gravier. The man was later identified as the defendant Samuel Brown. The officers ordered Brown to come over to *544 their car, and as he did so he dropped a set of keys to the ground. The officers frisked Brown and advised him he was under investigation for drug activity. Brown became irate, and the officers handcuffed him. Off. Gillard testified he walked over to a white Cavalier that was parked across the street from the house where Brown had been sitting. Off. Gillard stated he looked inside the window and saw a clear plastic bag containing a white powder lying on the front passenger seat. Believing the bag contained cocaine, the officer tried to open the car door, but it was locked. The officer then retrieved the set of keys Brown dropped, and one of these keys unlocked the car. The officer seized the bag of cocaine.
Officer Gillard testified the officers arrested Brown, and Gillard then searched the car. He found documents in the defendant's name in the glove compartment, as well as a gun on the driver's side of the vehicle. The gun had four bullets and an obliterated serial number. Off. Gillard testified that Brown then told him the gun and the cocaine did not belong to him, but rather he was selling the cocaine for another person. He refused to identify this person.
At the second suppression hearing, the defense presented two witnesses who testified they were present when Brown was arrested. Juanita Magee testified she was visiting a friend in an alley in the 3200 block of Gravier. As she left the alley to get a sandwich for her friend, she saw the officers in the block. She testified the officers ordered three men who had been standing near a house to get on the police car. She identified these men as Sammy, Smitty, and Johnny. She testified she saw the officers search the men and handcuff them. She stated the officers then ordered her to get on the car "for being nosy." She testified the officers searched under a nearby house, and then they searched two cars and a truck that were parked nearby. Finally, they searched a white car parked across the street, using a key that had been lying on the hood of the police car. She denied seeing anyone near the white car, but she admitted she was not able to see where Brown had been prior to her leaving the alley. She also admitted having prior convictions for criminal trespass, marijuana possession, and something involving a gun. In addition, she admitted she still smoked marijuana, but she denied smoking any the day of the hearing.
Kentrell Thomas testified he was also detained in the 3200 block of Gravier when Brown was arrested. He testified he lived in that block, and he and Brown were sitting on the porch of another residence in that block. He estimated he and Brown were together for fifteen to twenty minutes before the police arrived. He stated a police car pulled up, and the officers got out and ordered him and Brown to walk to the police car. Thomas testified the officers asked him and Brown what they were doing, and they replied they were "just chilling." The officers then handcuffed them and emptied their pockets on the hood of the police car. Thomas testified one officer walked into a nearby alley, then came back and took both his and Brown's sets of keys from the hood of the police car. Thomas stated he and Brown each identified their keys. He testified the officers searched many cars in the area, and then they went to a white car across the street. Thomas stated the officers searched that car, went back into the alley, and then came back out and indicated they had found "some kind of drugs or gun, or whatever." Thomas testified he never saw Brown go to the white car. However, he stated Brown admitted the white car belonged to him. Thomas also admitted he *545 saw the officers retrieve the cocaine from the car.

Errors Patent
A review of the record reveals the trial court erred in the sentence it imposed on the appellant for his firearm charge. As per La. R.S. 14:95.1, the appellant's sentence must be imposed without benefit of parole, probation, or suspension of sentence. A review of the sentencing transcript indicates the trial court forgot to impose the appellant's sentence without these prohibitions. Thus, the sentence is illegally lenient. However, as per La. R.S. 15:301.1(A) and State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with these restrictions of benefits, even in the absence of the trial court's failure to delineate them. Thus, there is no need for this court to correct the sentence. See State v. Phillips, XXXX-XXXX (La.App. 4 Cir. 7/23/03), 853 So.2d 675.[2]
In addition, La. R.S. 14:95.1 mandates the imposition of a fine of not less than $1000 nor more than $5000. The court failed to impose a fine. In State v. Williams, XXXX-XXXX (La.App. 4 Cir. 10/6/03), 859 So.2d 751, this court held that a reviewing court must remand cases for the imposition of a mandatory fine where the trial court failed to do so. Thus, this case must be remanded to the trial court for the imposition of the mandatory fine on the firearm count.
There are no other errors patent.

Assignment of Error
By his sole assignment of error, the appellant contends the trial court erred by denying his motion to suppress the evidence. Specifically, he argues the officers were without reasonable suspicion to stop him. He further argues that the evidence discovered pursuant to this illegal stop should have been suppressed. He also argues the officers were not justified in searching other cars and the alleyway in the area.
The appellant's claims are without merit. With respect to the appellant's claims concerning the alleged search of the other cars in the vicinity and the alleyway, no evidence was seized from any other car or from the alleyway. Thus, even assuming the court believed the testimony of the defense witnesses on this point over that of the officer, it would not matter whether the officers searched these other areas because neither defense witness testified she/he saw the officers find the cocaine and gun in these other areas. Indeed, Mr. Thomas admitted he saw the officer retrieve the cocaine "and stuff" from the white Cavalier. Thus, this particular claim has no merit.
The appellant argues the officers did not have reasonable suspicion to stop him, and he further argues the officers would not have found the cocaine had they not stopped him. It appears the appellant is incorrect on both grounds. La.C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
In State v. Thompson, XXXX-XXXX pp. 5-6 (La.4/9/03), 842 So.2d 330, 335, the Supreme Court addressed the standard for *546 determining if an officer has reasonable suspicion to conduct an investigatory stop:
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on individual's right to be free from governmental interference. State v. Varnell, 410 So.2d 1108 (1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Blanton, 400 So.2d 661 (La.1981); State v. Ault, 394 So.2d 1192 (La.1981).
* * *
In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. State v. Belton, 441 So.2d 1195, 1198 (La.1983) (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).)
Here, contrary to the appellant's allegation that the tip presented no predictive action of the suspect, Off. Gillard testified the informant called and told him Sam was selling drugs in that block at that time. The informant met with Off. Gillard and described Sam. The surveillance officer observed the appellant, who matched the description given by the informant, engage in two suspected drug transactions involving two separate buyers, one in a car and the other on foot. In each instance, the appellant went to the white Cavalier to retrieve the suspected narcotics. The appellant is correct that the State did not present the officer who actually observed the transactions to testify as to exactly what he saw. However, the tip from the neighbor, added to the surveillance officer's observations, gave the officers reasonable suspicion to believe the appellant had engaged in narcotics sales, thus enabling the officers to conduct an investigatory stop of him.
The appellant cites State v. Temple, XXXX-XXXX (La.9/9/03), 854 So.2d 856, to support his claim that the surveillance officer's observations were not sufficient to give his fellow officers reasonable suspicion to stop the appellant. In Temple, officers responded to an unrelated burglary call, and the victim explained that four people had tried to enter her apartment. The officers canvassed the area and saw four people sitting on a porch step. When the group saw the officers, one of them quickly leaned against a wall. The officers decided to interview the group, and as they approached from two directions a woman in the group sat down. The officers observed the defendant sit down next to her and hand her something. She placed the unknown object in her pocket and began walking away. The officers detained all four people in the group, and a search of the woman revealed a large amount of powdered and crack cocaine, which the woman admitted to the officers she was holding for the defendant. On appeal, this court reversed the defendant's conviction for possession with the intent to distribute cocaine, finding the officers did not have reasonable suspicion to stop the group.[3] On review, the Court upheld the reversal, holding that the evidence did not support a finding that the officers observed a drug transaction when they saw the defendant pass an unknown object to the woman.
Temple can be distinguished from the present case. In Temple, the officers were investigating an unrelated burglary; here, the officers were investigating a tip from a known informant that the appellant was selling drugs in the 3200 block of Gravier. *547 In addition, the officers' observations in Temple, though set forth in much more detail than those in the present case, did not show an exchange. Here, although the surveillance officer did not testify as to the particulars of his observations, he informed the takedown officers that he had seen two suspected drug transactions. While this scanty information might not have given the officers reasonable suspicion by itself, coupled with the tip from the known, concerned citizen, it was sufficient to give the officers reasonable suspicion to stop the appellant.
The appellant further argues that even if this court were to find the officers had reasonable suspicion to stop him, they did not have the right to conduct a frisk, and even if they did, the search exceeded the scope of a frisk pursuant to an investigatory stop. See State v. Jones, 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28; State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743; State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295. However, as with the alleged search of the other vehicles in the area and the alleyway, no evidence was seized from the appellant pursuant to any search of his person. Thus, it is immaterial if the officers had a justification for frisking the appellant or if their search exceeded the scope of a frisk.
The cocaine and the gun were seized from the white car. Off. Gillard testified he walked over to the car, looked through the window, and saw the plastic bag of what appeared to be cocaine lying on the seat. Thus, the cocaine was discovered in plain view, and the officers were justified in seizing it without a warrant. See State v. Jones, XXXX-XXXX (La.App. 4 Cir. 6/26/02), 822 So.2d 205; State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132. Off. Gillard testified he retrieved the keys the appellant dropped as he approached the car to open the car. He could lawfully retrieve these keys because the appellant abandoned them as he submitted to an investigatory stop, for which the officers had reasonable suspicion of criminal activity. See State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Allen, XXXX-XXXX (La.App. 4 Cir. 7/18/01), 792 So.2d 93. Once the officers retrieved the cocaine, they were justified in searching the entire car because they had probable cause to believe the car might contain further drugs and could search it without a warrant. See Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Wyatt, 99-2221 (La.App. 4 Cir. 9/27/00), 775 So.2d 481. Thus, the officers lawfully seized the cocaine, the gun, and the documents in the appellant's name, even though they did not have a warrant to search the car. This assignment has no merit.
Accordingly, appellant's conviction is affirmed and the case remanded for the imposition of the mandatory fine
AFFIRMED; REMANDED.
NOTES
[1] The appellant sought review in this court, but this court denied writs, finding the appellant would have an adequate remedy on appeal if he were ultimately convicted. State v. Brown, unpub. XXXX-XXXX (La.App. 4 Cir. 6/20/01).
[2] The same can be said for the court's failure to impose the cocaine sentence as a multiple offender without benefits of probation or suspension of sentence. Indeed, the court did not impose probation or suspend the sentence; thus, there really is no error as to that sentence.
[3] State v. Temple, XXXX-XXXX (La.App. 4 Cir. 6/19/02), 821 So.2d 738.