900 So.2d 999 (2005)
STATE of Louisiana
v.
Broderick HOLLIMON.
No. 04-KA-1195.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*1000 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Desirée M. Valenti, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
In this appeal defendant, Broderick Hollimon, challenges his conviction for possession of cocaine. For the reasons that follow, we affirm the conviction and sentence.
The record reflects that defendant was charged with possession of cocaine in violation of La. R.S. 40:967(C). Defendant filed a motion to suppress evidence and statement, which was granted by the trial court. Pursuant to the State's application for writ of review, this Court reversed the trial court's ruling, and remanded to the trial court for further proceedings. State v. Hollimon, Oubre & Miller, 03-1394, (La.App. 5 Cir. 1/23/04), unpublished. (The text of this Court's opinion is attached, see appendix A). Thereafter, defendant withdrew his plea of not guilty and pled guilty to possession of cocaine, reserving his right to appeal under State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for two years, suspended, and placed defendant on active probation for two years, concurrent with the sentence in case number 03-267. Defendant now appeals.
In this appeal, defendant alleges that the trial court was correct in suppressing the evidence and statements in this case because the initial stop of co-perpetrator Miller was unjustified. Defendant contends that the officer did not have reasonable suspicion to stop Miller and, therefore, the evidence recovered after that illegal stop should have been suppressed as fruits of the poisonous tree. Defendant requests that the ruling of the trial court granting the motion to suppress should be reinstated and that he should be allowed to withdraw his guilty plea and have the case dismissed. He notes that this matter has already been decided by this Court, that there is no new testimony, and that the issue is being raised again to preserve his right to appeal to the Louisiana Supreme Court.
The State responds that the trial court improperly granted defendant's motion to suppress, and that this Court was correct in reversing that ruling. It argues that sufficient articulable suspicion existed for the officers to conduct the initial investigatory stop of Miller and, therefore, the seizure of evidence retrieved from defendant as a result of Miller's stop was proper.
In State v. Davis, 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 644, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874, this Court discussed the "law of the case" doctrine, and said that "Under the `law of the case' doctrine, an appellate court will generally not reconsider prior rulings made in the same case on subsequent appeal.... Judicial efficiency demands that this Court accord great deference to its prior rulings." Footnote 2, (citations omitted). See also State v. Gillet, 99-2474 (La.App. 4 *1001 Cir. 5/10/00), 763 So.2d 725, 728-729, wherein the appellate court would not reverse its prior decision reversing the trial court's granting of a motion to produce confidential informant, where no new evidence was introduced to suggest that the prior decision was erroneous and defendant admitted at trial that the informant was not in the restroom at the time of the drug transaction.
In the instant case, the issue raised by defendant has already been thoroughly analyzed by this Court. See Appendix A. Additionally, as was noted by defendant, there is no new evidence to warrant reconsideration. Accordingly, we decline to reverse our previous ruling.
We have reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990), and find no error which warrant our consideration.
For the above discussed reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.

APPENDIX A
STATE OF LOUISIANA
VERSUS
HOLLIMAN, OUBRE & MILLER
No. 03-K-1394
FIFTH CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA

WRIT GRANTED
The State of Louisiana seeks review of a ruling of the trial court granting defendant's motion to suppress. For the reasons stated more fully herein, we reverse the trial court's ruling and remand for further proceedings.

Facts
At the motion to suppress hearing, Jefferson Parish Deputies Shane Klein and Alex Dobrescu presented similar testimony. Around 1:00 a.m. to 2:00 a.m. on December 29, 2002, the uniformed officers were on foot patrol at a motel that was in a high crime and high drug trafficking area.
Deputy Klein previously made nine drug-related arrests at the motel. The motel's owner told officers that most of her clients were prostitutes and drug users. As the deputies walked through the motel's parking lot, they spotted Miller at the rear. Miller, who was approximately six to seven feet away, made eye contact with Deputy Klein and acted nervously. Miller was spooked and surprised when he saw the police. His suspicious behavior, the late hour, and the fact that Miller was alone, prompted Deputy Klein to investigate in order to see what Miller was doing. Deputy Klein walked toward Miller. The officer was not aware that a crime had been committed. When Miller made eye contact with Deputy Klein, Miller abruptly turned and walked quickly away from the deputy. Deputy Klein asked Miller to stop. The officer wanted to determine if Miller had a room at the rear. Miller stopped and looked toward the deputies. Miller's hand was tightly clenched. Deputy Klein asked him to unclench it. Although he had no reason to believe Miller was armed, he did not know what he had in his hand. Miller probably could have had a knife. Miller raised both hands. Deputy Klein saw a bag that was consistent with crack cocaine. The officer retrieved the bag and placed Miller under arrest. When he interviewed Miller, Miller was sweating profusely; he was very nervous; and he was disoriented. The officer thought he was up to "no good."
*1002 Deputy Dobrescu explained the area was well-lit and it was cold that night. The officers gave Miller verbal commands to stop, turn around and raise his hands so that the officers could see them. Deputy Dobrescu suspected Miller might have committed a crime. He suspected he was a person selling or possessing crack cocaine based on his experience and the observation that Miller looked emaciated and visibly nervous. Deputy Dobrescu stated that Miller appeared visibly nervous when walking because Miller lacked focus and appeared to be in his own world.
Deputy Dobrescu testified that he saw Miller clenching a bag that contained an off-while colored object. After he unclenched his fist as requested by Deputy Klein, Deputy Dobrescu could clearly see a baggy containing several off-color rocks.
Miller had approximately 29 grams of cocaine. Deputy Dobrescu handcuffed Miller while Deputy Klein read Miller his Miranda rights from a card. Miller said he understood these and gave a statement. Miller was sweaty; he had slurred speech; and he appeared intoxicated. He denied selling crack cocaine. He said he was in room number 6 where there were two subjects and the presence of crack cocaine. Deputy Klein went to this room while Deputy Dobrescu remained with Miller.
Deputy Klein knocked on the door. At the time, his gun was not drawn. Approximately 30 seconds later, Holliman opened the door and stepped out. As soon as Holliman stepped out, the officer approached the door. Holliman panicked and dropped something on the ground. The officer heard glass cracking. It sounded like a cracked crack pipe. He looked down and saw the broken crack pipe and a large piece of crack cocaine on the ground outside the room. The officer retrieved the cocaine and pushed open the door. Holliman tried to slam the door. Holliman jumped back into the room squeezing the officer's arm that was in the doorway. Holliman hit the officer's head with the door. The officer's head prevented the door from closing. Deputy Klein saw Oubre jump off the sofa and move toward the rear. While the officer was in the doorway, he saw Oubre throw something to the floor of the rear bedroom. He heard a sound that might be glass. He later learned it was a broken crack pipe. He entered with his gun drawn and told the two subjects to get on the floor. He and Deputy Dobrescu, who had now entered, placed them in handcuffs.
Deputy Dobrescu testified he entered the room after Deputy Klein called to him. In the front room, he saw a couple of rocklike objects on the floor and paraphernalia in the form of pipes and a brillo pad. Deputy Klein was seating the two defendants and handcuffing them. He believed they were already under arrest when he arrived. He saw Deputy Klein read the defendants their rights from a card and the defendants indicate they understood them. All of the items collected into evidence were in plain view.
Deputy Klein retrieved the item that Oubre tossed. In between the bed and the dresser were two pieces of a broken crack pipe with a small amount of crack cocaine. The motel room was a large room where the bedroom could be seen from the living room.
Oubre said that Miller wanted to exchange crack cocaine for a pipe. Holliman and Oubre told the officers that they did not know that Miller had that much crack cocaine on him.
After placing the subjects under arrest and reading their rights, Deputy Klein saw a small amount of crack cocaine on the living room table along with a razor blade. The cocaine appeared to be cut.
*1003 After the defendants were placed under arrest, Deputy Klein conducted an NCIC criminal history check and discovered that all three were wanted on outstanding warrants and attachments.

Analysis
The state bears the burden of proving the admissibility of evidence that is seized without a warrant. La.C.Cr.P. art. 703 D; State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574. A ruling on a motion to suppress will not be disturbed absent abuse of the trial judge's discretion. Id. In determining the validity of an investigatory stop, this court must conduct an objective inquiry, using an objective standard, into the totality of the circumstances surrounding the encounter. State v. Dumas, 00-862 (La.5/4/01), 786 So.2d 80, 81.
Police may make an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity. State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127, 1130 (citing La.C.Cr.P. art. 215.1 and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). However, police do not have to observe what they know to be criminal behavior before investigating; the requirement is that the officers have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989. In determining the validity of an investigatory stop, this court must conduct an objective inquiry, using an objective standard, into the totality of the circumstances surrounding the encounter. State v. Dumas, supra, 00-862 (La.5/4/01), 786 So.2d 80, 81.
Statements given during a period of illegal detention are inadmissible, even though voluntarily given, if they are the product of illegal detention and not the result of an independent act of free will. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1185. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 485-86, 9 L.Ed.2d 441 (1963).
Before ruling, the trial judge asked for memoranda specifically addressing whether the Miller stop was illegal and if so whether what followed was the fruit of the poisonous tree. The trial judge limited her ruling to these issues. She reasoned that this case fell within State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856, and found the officers lacked reasonable suspicion for an investigatory stop. And since the stop was unconstitutional, the knock on the door based solely on Miller's statements was the fruit of the poisonous tree. She specifically granted the motions to suppress Miller's statements, the drugs seized from Miller and the drugs seized from the room. She did not rule on the admissibility of Oubre's and Holliman's statements.
In State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856, the Louisiana Supreme Court found that the appellate court correctly concluded the officer lacked reasonable suspicion for an investigatory stop. In that case, officers responded to a call of an attempted burglary in a housing development. The alleged victim reported that four individuals attempted to enter her apartment without her permission. Officers saw four individuals sitting on a porch step at the apartment. One individual quickly leaned against the wall when he saw the police. Upon seeing the officers, a female member sat down and the defendant sat next to her. An officer saw the defendant hand the woman a white object, which the female quickly placed in her pocket and then attempted to walk away. The police detained all four people.
*1004 The Supreme Court found that the record did not support a conclusion that the officers believed they saw an illegal drug transaction based on the ambiguous actions. 854 So.2d at 861. The court explained that reasonable suspicion for a stop is more than "looking nervous" and sitting on a porch step in a "high crime area." Nothing in the record established that the officers had a reason to focus on these individuals as ones involved in a crime or any wrongdoing. Id.
However, we find the case of State v. Temple to be distinguishable from the facts of the present case.
We find that based on the totality of the circumstances present in this case, the officers had reasonable suspicion to conduct an investigatory stop because of the following: Miller was not simply within a neighborhood that was known for high crime and high drug trafficking activity, he was walking in the parking lot of a private motel, which was a specific location notorious for having a clientele of prostitutes and drug users and a location where officers had recently made nine drug arrests. In addition, Miller was walking alone during the early morning hours. When he saw the police, he was spooked and noticeably nervous. He tried to evade the officers. He was sweating although it was cold. His emaciated appearance and nervous behavior suggested to Deputy Dobrescu that based on his experience, Miller was a person selling or possessing crack cocaine. After the stop, the police observed a bag in Miller's unclenched fist containing several off-colored rocks that were consistent with crack cocaine.
In State v. Bradley, 00-1090 (La.App. 5 Cir. 6/27/01), 791 So.2d 156, 158-159, writ denied, 01-1973 (La.6/14/02), 817 So.2d 1151, this court found reasonable suspicion for an investigatory stop, although there was no indication in that case that the defendant attempted to evade the police as Miller did. In Bradley, the officer testified that while on routine patrol, he drove near a motel in an area known to have a high volume of narcotics trade and prostitution. He saw the defendant walk from door to door and knock. He was suspicious that he might be preparing to commit a burglary, looking to purchase or sell narcotics, or looking for a prostitute.
Another similar case is the Louisiana Supreme Court case of State v. Johnson, 01-2081 (La.4/26/02), 815 So.2d 809, 811, 812. In Johnson, the court found the trial court erred in granting the motion to suppress the evidence. The court found minimal objective justification for an investigatory stop. The subjects did not flee from the police once they noticed them but instead the respondent quickened his pace to a "near run" and the two subjects looked repeatedly over their shoulders in the officers' direction. The officers believed the men were attempting to cut them off by proceeding to an area where their unit could not follow. The court gave deference to the deduction by a trained police officer, and concluded that in the context of the other circumstances known to the officer, including the lateness of the hour, the high crime character of the area, and the nervous demeanor of the two men reflected in their repeated glances over their shoulders, the respondent's evasive conduct provided the minimal objective justification for an investigatory stop. The officer then lawfully retrieved the crack cocaine pipe dropped by the respondent before the officer could pull on his gloves to conduct a pat down search.
Considering Bradley and Johnson, and based on the facts of the present case, we find that the trial judge abused her discretion in finding the stop of Miller was illegal. Further, we find that the officer was *1005 justified in ordering Miller to unclench his fist based on his concern for his own protection, and the drugs discovered there were properly seized. See, State v. Sylvester, 01-607 (La.9/20/02), 826 So.2d 1106, 1109, and cases cited therein. Additionally, as the officers conducted a lawful stop, Miller's statements were not subject to suppression. The statements were given after the stop and after Miller was advised of and understood his Miranda rights. Additionally, the remaining drugs from the motel room and outside the room were properly seized because these were in plain view.
Accordingly, for the reasons assigned herein, the judgment of the trial court granting defendant's motion to suppress is hereby reversed and the matter is remanded to the trial court for further proceedings.