THIBODEAUX, Chief Judge.
|, Arthur James Handy was charged with possession of methylenedioxymethamphe-tamine (MDMA), a violation of La.R.S. 40:966. He was also charged as a habitual offender. Handy pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The trial court adjudicated Handy a third felony offender and sentenced him to life imprisonment without the benefit of probation, parole, or suspension of sentence. Handy appealed, claiming the trial court erred by denying his motion to suppress the evidence found during a search of his person. Because this court concludes that the search was unconstitutional, we find that the trial court erred by denying Handy’s motion to suppress. We, therefore, reverse Handy’s conviction and adjudication as a habitual offender, vacate Handy’s sentence, and remand the matter for further proceedings.
I.

ISSUE

We shall consider whether the trial court erred by denying Handy’s motion to suppress the evidence found in his buttocks, where the police did not see that Handy engaged in any illegal activities, did not think that he had a weapon, and did not feel any weapons or contraband on him during a pat-down. The police conducted an invasive search after perceiving an odor of burnt marijuana in the vicinity of Handy’s residence. The police observed what appeared to be a gambling activity, chased another person who, upon seeing the police, ran with a bag containing drugs, and observed that Handy clenched his fist and placed his hand inside of his pants.
J2.IL

FACTS

Agent Mike Boutte testified he was patrolling the area of Plumb Street, which is a high-crime area, when he perceived an odor of burnt marijuana. Agent Boutte observed ten to twenty people, some of whom, with money in hand, were shooting dice under a carport approximately ten or fifteen feet from the road. Agent Boutte began an investigation because of the marijuana smell and because of his observation of gambling, although he was not sure that the group was gambling. The police did not see that Handy was shooting dice, smoking marijuana, or breaking the law in some other manner. No marijuana was found at the residence.
When Agent Boutte arrived at the residence, Demmick Brown picked up a plastic grocery bag and ran toward the back yard. Agent Boutte pursued Brown. As Brown ran, he threw the bag toward the house and jumped over the fence. The bag contained bottles filled with, what was later determined to be, liquid codeine.
When later Agent Boutte was gathering information from the people present, Officer Todd Borel told him that Handy had placed something in the rear of his pants. *1015 Agent Boutte testified he was “possibly” concerned about his safety when he went over to Handy as Handy could have been hiding anything from a knife to a screwdriver or even a small handgun, and it was common to find illegal substances in a person’s pants.
Agent Boutte checked Handy’s pockets and found nothing. Agent Boutte did not feel anything like narcotics during the frisk. Nevertheless, Handy was tensed up and extremely nervous. Agent Boutte then looked down Handy’s pants, using a flashlight, and observed a plastic bag between the cheeks of Handy’s |sbuttocks. Agent Boutte directed Handy to retrieve the bag, and Handy complied. The bag contained two pills.
Officer Borel testified that he smelled burnt marijuana at the residence. He observed that Handy placed an object inside the buttocks area of his pants but did not see that Handy engaged in any other suspicious or criminal activity. Officer Borel did not observe anything that resembled a weapon and did not know what Handy had in his hand. He further testified: “I didn’t believe that he placed a weapon in the back of his pants.” When asked if he observed anything that would constitute a plastic bag, Officer Borel stated, “I saw just his hand clench and him go on the inside of his pants.” He then told Agent Boutte what he saw.
III.

STANDARD OF REVIEW

The State bears the burden of proving the admissibility of the evidence seized without a warrant. La.Code Crim.P. art. 703(D). “A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.” State v. Hunt, 09-1589, p. 7 (La.12/1/09), 25 So.3d 746, 752 (citing State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, cert. denied, — U.S.-, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008)).
IY.

LAW AND DISCUSSION

An officer may stop a citizen in a public place and question him. La.Code Crim.P. art. 215.1. Nevertheless, the right to make such an investigatory stop must be based upon a reasonable suspicion that the individual has committed, or is about to commit, an offense. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). If an officer reasonably suspects that he is in danger when he stops a person, the officer may frisk the outer clothing of the person for weapons. La. Code Crim.P. art. 215.1(B).
When there is no probable cause to arrest, to make an investigatory stop the officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). There must be more than an “inchoate and unparticularized suspicion or ‘hunch.’ ” Terry, 392 U.S. at 27, 88 S.Ct. at 1883 (citation omitted). “This level of suspicion, however, need not rise to the probable cause required for a lawful arrest.” State v. Temple, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 860. Whether the police had the objective basis for an investigatory stop, reviewing courts look at the totality of the circumstances of each case. Id. (citations omitted). The courts must note that police officers use their experience and training to make deductions from the cumulative information available to them which may elude an untrained person. Id. (citations omitted).
*1016 “The assessment by a reviewing court of the cumulative information known to the officers avoids a ‘divide-and-conquer analysis’ by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear ‘readily susceptible to an innocent explanation.’ ” Id. (quoting United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740(2002)). In making a determination about reasonable suspicion, the reputation of an area is an articulable fact and, therefore, is relevant. State v. Buckley, 426 So.2d 103 (La.1983) (citations omitted).
| ¿Finally, if the protective frisk is justified, and during the pat-down the officer
feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
Temple, 854 So.2d at 862 (quoting State v. Broussard, 00-3230, pp. 7-8 (La.5/24/02), 816 So.2d 1284, 1289).
For example, in Temple, 854 So.2d 856, police responded to a call regarding an attempted burglary by four individuals. Police canvassed the front and rear of the apartment building in question and found four individuals sitting on a porch step. One of the individuals quickly leaned against the wall when he saw the police. The only female in the group sat down and the defendant sat next to her. Police then saw that the defendant handed a white object to the female, which she placed in her pocket and then attempted to walk away. At that point, the police detained the group. A pat-down of the female revealed 141 pieces of rock cocaine and sixty bags of powder cocaine.
The supreme court noted that none of the officers expressed any concern for his safety, which would justify a protective frisk. Moreover, even if the pat-down were justified, no evidence indicated that the content of the female’s pocket was readily identifiable by the “plain feel.”
The supreme court then distinguished the case from Broussard, 816 So.2d 1284. There, the officer testified he knew, based on his knowledge and experience as a narcotics officer, that narcotics and firearms have a known association. Thus, the officer’s expression of concern for his own safety and that of the other officers provided an articulable basis for a protective frisk. During that pat-plown, the officer felt lumps and heard the crinkle of plastic from the defendant’s pocket, which he knew, from his years of experience, to be consistent with drug packaging of crack cocaine. Therefore, in that case, the evidence was obtained by lawful means.
On the other hand, in Temple, 854 So.2d 856, the testimony of the officer who searched the female was devoid of any description of her pat-down and of any perceptions she may have had during the pat-down. The officer did not state that she saw or felt any lumps or that she heard the crinkle of plastic coming from the female’s pocket. Therefore, there was no support for the “plain feel” exception.
Moreover, there was nothing to justify a search incident to an arrest, as the facts did not give rise to probable cause to make an arrest. The officer who observed that the defendant placed a white object into the female’s hand or pocket admitted that he could not tell that the white object was contraband.
In State v. Thomas, 08-521 (La.App. 5 Cir. 1/27/09), 8 So.3d 646, writ denied, 09-391 (La.12/18/09), 23 So.3d 928, the defendant and another individual were loitering in a high-crime area in front of a building *1017 posted with a “no loitering” sign. The defendant was waving or flagging down people. As the police approached, the defendant made a quick sweeping motion as he was reaching for something under his shirt, turned, and began walking away. The police subsequently stopped the defendant.
During the pat-down, the officer felt a large bulge in the defendant’s pocket that did not feel like a weapon. The bulge was not clearly identifiable as contraband. The police retrieved the item and determined that it was marijuana. The police then felt a hard object in the defendant’s back waistband, which was a gun.
|7The court found that, under the circumstances, the officers’ belief that there was a substantial possibility of danger was warranted. Therefore, a pat-down was proper. Nevertheless, the court found that the entry into the defendant’s pocket and retrieval of the item exceeded the scope of a valid Terry pat-down.
In another case, the court reversed the defendant’s conviction for possession of crack cocaine where the police observed that the defendant placed something white in his pocket and then hurried to a nearby grocery. State v. Hughes, 99-2554 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, writ denied, 00-1981 (La.6/1/01), 793 So.2d 179. There, the officers did not testify that the area involved was known for drug-trafficking. Moreover, the officer conceded that he thought the defendant was involved in drug activity based on his nineteen years of experience as a police officer. The court found that this amounted to little more than a hunch.
Similarly, the court affirmed a grant of a motion to suppress where the police officer saw the defendant standing in an area known for high drug activity, and, upon seeing the police car, he put his hands in his pockets as if attempting to conceal something. State v. Ellington, 96-766 (La. App. 4 Cir. 9/4/96), 680 So.2d 174. The pat-down search of the defendant revealed a folding knife in his pocket. Then, the officer shined a flashlight into the same pocket and found a glass vial containing cocaine residue. The court concluded that the particular facts of the case were insufficient to justify the stop. The court further reasoned that even if the initial stop were justified, the subsequent search was not because La.Code Crim.P. art. 215.1 only allowed a frisk of outer clothing for a dangerous weapon.
Here, the State asserts that Agent Boutte had observed illegal gambling and smelled marijuana when he passed Handy’s residence. When the police approached the house, an individual ran from the officers and possessed what they 18suspected was codeine. Handy was then observed placing something into the back of his pants. The State asserts that Agent Boutte gave particularized reasons for why he felt his life might have been in danger. The State also asserts that Agent Boutte recognized Handy’s actions as an immediate danger to both himself and his fellow officers.
We note that Agent Boutte did not testify that he regarded Handy’s actions as an immediate danger to himself or others. We also note that Agent Boutte did not actually observe that Handy put his hand down the back of his pants. Officer Borel made this observation.
Further, there was no evidence at the hearing that Handy was dealing drugs. The police did not see that Handy was shooting dice, smoking marijuana, or breaking the law in some other manner. Apart from seeing the gesture, the police did not observe that Handy engaged in any other suspicious or criminal activity. The officer who observed that Handy placed something in the back of his pants did not think he was hiding a weapon. *1018 Finally, the protective frisk revealed nothing that could have been perceived as a weapon or contraband.
This court concludes that the pat-down in this case was improper. Officer Borel did not think Handy had a weapon, nor did he observe a weapon. He “saw just his hand clench and him go inside of his pants.” Even if the pat-down were warranted, Agent Boutte’s act of peering in Handy’s pants with a flashlight exceeded the scope of a pat-down permitted by Terry. Agent Boutte checked Handy’s pockets and felt nothing. Additionally, he did not feel anything that felt like narcotics during the frisk. Based on the testimony and the cases discussed above, the pat-down and Agent Boutte’s act of peering in Handy’s pants were improper.
|9The threshold for probable cause is higher than the one for a Terry stop and frisk. Because we conclude that even a Terry frisk was unwarranted in this case, we need not address the State’s argument that Agent Boutte had probable cause to arrest Handy. Furthermore, the above-discussed jurisprudence provides more than sufficient guidance on personal searches. Therefore, contrary to the State’s suggestions, this court need not resort to the jurisprudence from the other states or to the jurisprudence on warrant-less searches of vehicles.
V.

CONCLUSION

For the reasons above, the trial court erred by denying Handy’s motion to suppress. Accordingly, Handy’s conviction and adjudication as a habitual offender are reversed, his sentence is vacated, and the matter is remanded for further proceedings.
CONVICTION AND ADJUDICATION REVERSED; SENTENCE VACATED; CASE REMANDED.
AMY, J., concurs in the result and assigns separate reasons.