902 So.2d 536 (2005)
STATE of Louisiana
v.
John BRASHEARS.
No. 04-KA-1207.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*537 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Shannon H. Huber, Frank A. Brindisi, James W. Adair, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and SUSAN M. CHEHARDY.
EDWARD A. DUFRESNE, JR., Chief Judge.
The defendant, John Brashears, appeals his conviction of second degree murder, a violation of LSA-R.S. 14:30.1. We affirm the conviction and remand.
The Jefferson Parish Grand Jury returned an indictment charging defendant with the second degree murder of Myra Huy. At the arraignment, defendant pled not guilty. The matter thereafter proceeded to trial before a twelve person jury which found defendant guilty as charged. After denying defendant's motions for new trial and for post-verdict judgment of acquittal, the trial court sentenced defendant to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS
Defendant met the victim, Myra Huy, through a friend, and the two began a relationship which lasted about five or six years. On the day of the shooting, September 13, 2002, defendant and Huy were *538 living together on Adolph Street in Jefferson Parish. At trial, the sixty-five year old defendant testified that when he returned home, Huy came out of the house with a gun and began fussing at him in the backyard. Defendant took the gun away from her. Huy then proceeded to get into her mother's car. Defendant followed her to the car to try to talk to her. Defendant was leaning on the car door with the gun in his hand resting on the open window. Defendant testified, "I thought she was reaching at the gun but she slammed the door and the gun bumped the side of her head and went off." According to defendant, no one's finger was on the trigger when the gun fired. Defendant then opened the car door, looked inside, and saw blood coming out of Huy's nose and mouth. He testified that it appeared to him that she was not breathing. Defendant got scared and fled the scene in his vehicle. After driving about four to five hours, defendant threw the gun out of the car window. Defendant apparently stopped in Texas to get some gas, and then decided to return home. Defendant first went to his parents' house and then surrendered to police. After being advised of his rights, defendant gave a statement to police in which he admitted that he and the victim were arguing prior to the shooting. He claimed that the gun was lying on the car window, that Huy went to grab it, that he then pulled the gun back, and it went off. Defendant was subsequently arrested and charged with the second degree murder of Huy.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant argues that the trial court erred in failing to grant a new trial based on insufficient evidence.[1] Specifically, defendant contends that the state failed to present evidence that he intended to shoot the victim, and thus, failed to negate the reasonable hypothesis of innocence that the gun was accidentally discharged.
The constitutional standard for testing the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." On appeal, the reviewing court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, the court must evaluate the evidence in a light most favorable to the prosecution and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Boss, 03-133 *539 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 77, writ denied, 03-1968 (La.5/14/04), 872 So.2d 508.
Defendant was convicted of second degree murder which is defined, in pertinent part, in LSA-R.S. 14:30.1 A(1) as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Woodhead, 03-1036 (La.App. 5 Cir. 1/27/04), 866 So.2d 995, 999, writ denied, 04-0598 (La.7/2/04), 877 So.2d 144. Whether a defendant possessed the requisite intent in a criminal case is for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Simmons, 98-841(La.App. 5 Cir. 6/1/99), 738 So.2d 1131, 1134, writ denied, 99-2419 (La.4/20/00), 760 So.2d 333. Flight and attempt to avoid apprehension are circumstances from which the jury may infer a guilty conscience. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 913, writ denied, 04-2220 (La.1/14/05), 889 So.2d 266.
In the present case, we find that the evidence presented at trial was sufficient to support defendant's conviction. Both in his trial testimony and in his statement given to police, defendant maintained that the shooting was an accident. At trial, defendant stated that he was leaning on the car door with the gun in his hand resting on the open window. Defendant testified, "I thought she was reaching at the gun but she slammed the door and the gun bumped the side of her head and went off." In his statement given to police, defendant maintained that the gun was lying on the car window, that Huy went to grab it, that he pulled the gun back, and it went off. However, testimony presented by the state showed that Huy sustained a contact gunshot wound.
Dr. Susan Garcia, a forensic pathologist with the Jefferson Parish Coroner's Office, testified that she performed an autopsy on the victim, and determined that she sustained a contact gunshot wound to her left ear. She explained that a contact wound indicates that the muzzle of the weapon was in contact with the skin at the time of the discharge of the weapon. Dr. Garcia further noted that at the time of discharge, the weapon was in or on the ear canal of the victim. Finally, at the time of discharge, the gun was pointed level or maybe slightly down when it was fired.
The state also called Alfred Schwoeble as an expert witness in the field of gunshot residue analysis. He testified that he examined residue taken from the victim and concluded, by the amounts of gunshot residue present on the victim's hands, that her hands were not on the weapon when it was discharged. Schwoeble further testified that the victim had heavier amounts on her right hand and barring any wind, her right hand was at least a foot away from the gun when it was fired.
Defendant's actions after the shooting further support the jury's determination that the shooting was not accidental. By defendant's own admission, he fled the scene because he was scared. The state also presented the testimony of two other individuals who observed defendant leave the scene. Danielle Ianetta, the leasing agent and assistant manager at the complex where defendant resided with the victim, testified that after learning that there had been a shooting, she looked out of the window and observed defendant running back and forth from behind the house to *540 the vehicle about four or five times. Defendant then jumped into his car and hurriedly left the scene. Anthony Spano, who was inside his sister's house across the street from the incident, testified that he saw a yellow Aries driving up the street.[2]
Not only did defendant leave the scene, he also failed to call the police or an ambulance despite the fact that the victim was probably still alive when he fled. Frank Untereiner, the maintenance director for Azalea Gardens, went to the scene after learning of the shooting. He testified that the victim in the vehicle appeared to be alive because when she tried to breathe, blood would come out of her nose and bubbles would form. Also, her torso was moving up and down. The state also called Anthony Spano who went to the scene after finding out about the shooting. Spano testified that the victim was still breathing and her hands were moving. In addition, Dr. Garcia testified that the victim's death was not instantaneous.
Moreover, after leaving the scene, defendant drove towards Texas. After driving about four to five hours, he threw the gun out of the car window.
In the present case, the jury was presented with two conflicting versions of events. By its guilty verdict, the jury obviously found the testimony of the state's witnesses to be more credible than that of defendant relative to the events of September 13, 2002. It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to reweigh the evidence. State v. Carter, 98-24 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444.
Viewed in the light most favorable to the prosecution, the evidence was sufficient for the jury to reasonably conclude that the shooting was not accidental, and that defendant had the specific intent to kill or inflict great bodily harm on the victim. Accordingly, the trial court was correct in denying defendant's motion for new trial.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant contends that the trial court erred in limiting defense's questioning of the final jury panel. He contends that the trial judge's limiting voir dire and imposing an arbitrary time limit violated his constitutional rights and impaired his ability to adequately select a jury.
As guaranteed by Article I, § 17(A) of the Louisiana Constitution, "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." The trial court is granted broad discretion in regulating the conduct of voir dire. LSA-C.Cr.P. art. 786. However, the trial court may not impose limitations that deprive counsel of a reasonable opportunity to discover grounds for cause challenges and to intelligently exercise peremptory challenges. State v. Williams, 04-608 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1098. Counsel must be afforded wide latitude to conduct a voir dire examination to effectuate the defendant's right to full voir dire of prospective jurors as embodied in Article I, § 17 of the Louisiana Constitution. State v. Royal, 01-438 (La.App. 5 Cir. 1/15/02), 807 So.2d 962, 964, writ denied, 02-0532 (La.1/10/03), 834 So.2d 436.
However, this wide latitude does not allow the defendant unlimited inquiry into all possible prejudices, including the prospective jurors' opinions on evidence, or its weight, hypothetical questions, *541 or questions of law that call for any prejudgment of supposed facts in the case., The scope of the voir dire examination lies within the trial court's discretion, and the court's ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. To assure wide latitude has been afforded to the defendant in examining prospective jurors, review of the trial judge's rulings on the record of the voir dire examination as a whole should be undertaken. State v. Williams, 889 So.2d at 1098-1099.
A review of the record and of the trial judge's rulings during the voir dire examination shows that the court afforded the defense sufficiently wide latitude in examining prospective jurors. Prior to the trial court's sustaining the state's objection and ruling to limit the voir dire examination as to the final panel, defense questioned prospective jurors on various issues. Specifically, defense counsel questioned potential jurors about their education, employment, marital status and whether they had children. In addition, he questioned them about their prior jury experience, relationships to law enforcement officers, gun ownership, favorite news channels and political talk shows, and whether they had ever been victims of crime. The defense then inquired into whether the prospective jurors understood that defendant did not have to prove his innocence and whether they could accept that presumption of innocence. Defense counsel then began examining jurors about their ability to distinguish between murder and homicide. The state objected and the objection was sustained. The defense counsel continued on this path, however, speaking to the potential jurors regarding the difference between specific intent and an accident and inquiring whether they could return a not guilty verdict because not all homicides are murders. Again, the state's objection to this line of examination was sustained, and the court acknowledged that it would give the jury definitions at a later time if they were chosen to serve. The court told defense counsel "[i]f you're going to argue a certain defense before these jurors, I think that you can get to the point and suggest to them that as a part of your defense, you're going to argue accident. Will they hold it against him, or will they consider it?" The state agreed that, if defense counsel proceeded according to the court's suggestion, it would not object. Immediately after the court took a recess, the trial judge informed defense counsel that he had ten minutes remaining for voir dire examination. Defense counsel stated that he was in a position where he did not know how to dissect the remaining ten minutes allotted, and therefore, terminated his examination altogether and noted his objection. Afterwards, defense counsel was still capable of challenging potential jurors for cause.
In the present case, defendant has failed to show how he was prejudiced by the limitations placed on the voir dire examination of the final panel. At the time voir dire was limited, eleven jurors had been chosen. Defendant had already exhausted all of his peremptory challenges, and thus was left with only the option of challenging for cause. The trial judge gave defense counsel wide latitude in examining the prospective jurors. Defense counsel was given the opportunity to test the impartiality and competency of the prospective jurors and was also able to inquire into the possible prejudices of the jurors in order to determine if there were grounds for cause challenges. Moreover, the trial judge gave the defendant the opportunity to ask the jurors if they could recognize or consider an accident defense. However, defendant chose not to utilize the ten minutes he had remaining for voir dire examination. If defendant believed questioning the jurors *542 regarding the accident defense was crucial, defendant could have taken advantage of the time remaining to accomplish this questioning in the manner suggested to him by the court.
Based on the foregoing discussion, we find that the trial court did not abuse its discretion in imposing restrictions on defense counsel's voir dire examination. This assignment of error is likewise without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review of the record reveals that the trial judge did not accurately advise defendant of the prescriptive period within which to file an application for post-conviction relief. According to LSA-C.Cr.P. art. 930.8, a defendant has two years from the date his conviction and sentence becomes final to apply for post-conviction relief, not two years from the sentencing date. Therefore, we remand to the district court with instructions to inform defendant of the proper provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion, and to file written proof in the record that defendant received the notice. State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 951.
Accordingly, for the reasons set forth herein, defendant's conviction and sentence is affirmed, and the matter is remanded with instructions.
CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Although the denial of a motion for new trial based on LSA-C.Cr.P. art. 851(1) presents nothing for review on appeal, the Louisiana Supreme Court, as well as this court, have addressed the constitutional issue of sufficiency of the evidence under such circumstances. Accordingly, the sufficiency issue is before this court. State v. Colbert, 04-538 (La.App. 5 Cir. 11/30/04), 889 So.2d 1128, 1132.
[2] Defendant admitted that he fled the scene in a yellow Dodge Aries.