# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3106

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK A. ELDER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-CR-20049—**Michael P. McCuskey**, *Chief Judge.*

ARGUED SEPTEMBER 12, 2006—DECIDED NOVEMBER 1, 2006

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* The only question presented in this appeal is whether the district court should have suppressed evidence found in a shed that Mark Elder used to make methamphetamine. Like the district court, we conclude that the search and seizure were not unreasonable under the fourth amendment.

A 911 call led to the dispatch of two officers to a farm in Humbolt, Illinois. A caller had told the dispatcher "I think we got meth out here" and added that "suspicious" people were "flying like quails." The caller hung up, and when the dispatcher called the originating number no one answered. One obvious possibility was that the caller had

been injured. Officers saw lights and heard a TV within the farm house, but no one answered knocks on the front or rear doors. The door of a nearby outbuilding was open. (Whether it was open was disputed in the district court; the judge found that it was open and did not commit clear error in doing so.)

Looking through the doorway, the officers saw what appeared to be a laboratory. They entered in search of the caller and did not find him. But what they saw from outside (and both saw and smelled from inside) provided evidence against Elder, the property's owner. The caller turned out to have been Elder's father, who had not been abducted or injured—though the officers could not have known that without checking, because even if (as Elder maintains) they knew or should have known that the proprietors of the meth lab were fleeing during the 911 call, the officers could not have known whether they took a hostage (or a life) in the process, or whether some third party was refusing to acknowledge his or her presence, and what danger that person posed (or was in).

The entry into the outbuilding was reasonable, and a warrant was not essential to make it so. The officers acted sensibly in attempting to assure the caller's safety. The fact that drug dealers often use guns and knives to protect their operations created a possibility that violence had been done, or that someone was still there and lying in wait. So considerations of safety—the caller's and the officers'—made a look-see prudent. See *Brigham City v. Stuart*, 126 S. Ct. 1943 (2006); *Maryland v. Buie*, 494 U.S. 325 (1990). Everything else followed from there, and the evidence was admissible against Elder. His argument that police cannot take steps to protect a caller's safety unless they know the caller's identity and "reliability" would require them to act *un*-reasonably. Many 911 calls are brief, and anonymous, precisely because the speaker is at risk

and must conceal the call. These persons are more rather than less in need of assistance.

Because a warrant was not required, we need not express any view on the district court's conclusion that the inevitable-discovery doctrine independently defeats the motion to suppress the evidence. The usual understanding of that doctrine is that the exclusionary rule should not be applied when all the steps required to obtain a valid warrant have been taken before the premature search occurs. See *Murray v. United States*, 487 U.S. 533 (1988); *Nix v. Williams*, 467 U.S. 431 (1984). If probable cause alone—without putting in train the process of applying for a warrant—were enough to invoke the inevitable-discovery doctrine, that would have the same effect limiting the exclusionary rule to searches conducted without probable cause.

Perhaps that would be a good development; the main requirement of the fourth amendment, after all, is that the search be reasonable. See *United States v. Edwards*, 415 U.S. 800, 807 (1974). The exclusionary rule comes at such high cost to the administration of the criminal justice system that its application might sensibly be confined to violations of the reasonableness requirement. Cf. *Hudson v. Michigan*, 126 S. Ct. 2159 (2006). When a warrant is sure to issue (if sought), the exclusionary "remedy" is not a remedy, for no legitimate privacy interest has been invaded without good justification, but is instead a substantial punishment of the general public. (Unlike an award of damages, exclusion does *not* punish the wrongdoer.) Allowing the criminal to go free because of an administrative gaffe that does not affect substantial rights seems excessive. But whether to trim the exclusionary rule in this fashion is a decision for the Supreme Court rather than a court of appeals.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*