8 So.3d 646 (2009)
STATE of Louisiana
v.
Steven C. THOMAS.
No. 08-KA-521.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2009.
*649 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Desiree M. Valenti, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Steven Thomas, appeals from his conviction for possession of a firearm by a convicted felon and his sentence to 13 years at hard labor, without benefit. For the reasons which follow, we affirm.
On May 11, 2006, the Jefferson Parish District Attorney's Office filed a bill of information charging the Defendant with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1[1] At his arraignment, the Defendant pled not guilty. Subsequently, the Defendant filed a motion to suppress the evidence, which the trial court denied finding that there was reasonable suspicion for the initial stop and a cursory search for weapons.[2] The Defendant filed a writ application with this Court raising three errors regarding the trial court's denial of his motion to suppress the evidence. The writ application was denied. State v. Thomas, 06-845 (La.App. 5 Cir. 11/08/06). The case was tried before a twelve member jury in one day.
At trial, Officer Leon James and Deputy Harley Smith, both with the Jefferson Parish Sheriffs Office testified that, on May 1, 2006, at approximately 8:00 p.m., they were on proactive patrol in the Woodmere subdivision on the Westbank of Jefferson Parish, a high crime area. Officer James and Deputy Smith both testified that they saw the Defendant and another individual, later identified as Harold Banks, standing near an apartment building, located near 2241 Alex Korman Boulevard, which displayed a no loitering sign.[3]
*650 According to Officer James, one of the individuals, later identified as the Defendant, appeared to be flagging down motorists. Officer James testified that he thought the Defendant was trying to get the attention of the driver of a vehicle on the street. According to Officer James, he did not observe the Defendant with any weapons, contraband, or money in his hand. Both Officer James and Deputy Smith testified that no vehicle stopped in response to the Defendant. Subsequently, Officer James and his partner exited their marked police vehicle to investigate. Deputy Smith testified that he intended to question the Defendant to determine whether he was loitering, and because he was flagging down vehicles.[4]
Both Officer James and Deputy Smith testified that, as they started to approach, the Defendant and Banks noticed them, and the Defendant turned around and started to walk away. Deputy Smith testified that he saw the Defendant quickly place his hand under his shirt and move it around to his back. Deputy Smith testified that he ordered the Defendant to stop, return to the police vehicle, and place his hands on it. The Defendant complied. According to Deputy Smith, because he did not know what the Defendant reached for under his shirt, he conducted a Terry pat-down for weapons for officer safety.
Deputy Smith testified that he initially felt the front pockets of the Defendant's outer clothing even though he had seen Defendant's hand move to the back. During the pat-down, he felt a large bulge in the Defendant's right front pocket. Although he testified that he did not at that time think it was a weapon, he reached into the Defendant's pants pocket and retrieved the object. At trial, Deputy Smith testified that the object he recovered from the Defendant's pocket was marijuana.
Deputy Smith testified that he continued searching the Defendant and felt "a hard object in the [Defendant's] waistband." Deputy Smith testified that he "retrieved the hard object." Deputy Smith identified, in court, the 9-millimeter Luger he recovered from the Defendant's waistband. According to Deputy Smith, after the gun and marijuana were recovered, the Defendant told him that the gun belonged to his friend.
Larry McGaha, the owner of the building located at 4221 Alex Korman, testified that to his knowledge the Defendant was a resident of the building in May 2006. McGaha also testified that the building has never had a "no trespassing"[5] sign posted on it since he bought it in 1991.
Kendra Camese, and Jameiss Dillon, former neighbors of the Defendant, and Yamini Nukhtar testified for the defense, all stating that the building Defendant was standing in front of when stopped has never had a "no loitering" sign posted on it. Camese and Dillon testified that the Defendant was not waiving at cars, and he did not try and walk off when the officers arrived. Rather, as soon as the officers exited their vehicle, they told the Defendant to put his hands on the officer's car. The officer immediately searched the Defendant. They also testified that they did not see the officer take anything out of the Defendant's pocket and did not see them find a gun on the Defendant.
*651 Following the trial, the jury found the Defendant guilty as charged. Subsequently, the trial judge sentenced the Defendant to 13 years at hard labor without benefit of parole, probation, or suspension of sentence and with credit for time served. The Defendant's sentence was ordered to run concurrently with his sentence for the misdemeanor conviction for possession of marijuana, in case number 06-2570.[6] It is from this conviction and sentence that Defendant appeals.[7] The Defendant assigns two errors.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error the Defendant argues that the trial court erred in denying his motion to suppress. More particularly, the Defendant argues that the officers did not have reasonable suspicion to stop him and, thus, the pat-down for weapons was unjustified. He also points out that the officers did not state that they suspected that he had a weapon. Therefore, the evidence was improperly seized and should have been suppressed.[8]
The State argues that the deputies did have reasonable suspicion to initiate an investigatory stop. The officers were in a high crime area where they had previously made several arrests. The Defendant was observed loitering outside of a building posted with a no loitering sign, flagging down motorists, turning quickly before walking away upon seeing the officers approach, and making a quick hand motion under his shirt towards his back. Taken together, the State argues these facts provided reasonable suspicion for the stop. In addition, the State claims that the pat-down for weapons was proper because Deputy Smith was concerned for his safety after the Defendant made a sweeping motion with his hand under the back of his shirt as he fled.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. State v. Lee, 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122. Measured by this standard, La.C.Cr.P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Robertson, 97-2960, p. 2 (La.10/20/98), 721 So.2d 1268, 1269; State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the *652 specific facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. Robertson, 97-2960, p. 2-3, 721 So.2d at 1269; Belton, 441 So.2d at 1198. In determining whether the officers possessed the requisite "`minimal level of objective justification'" for an investigatory stop based on reasonable suspicion of criminal activity, United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the `totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" State v. Temple, 02-1895, p. 5 (La.9/9/03), 854 So.2d 856, 860 (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002), internally quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
A high crime area is an articulable fact upon which the police may rely. It is also relevant in determining whether there is reasonable cause to conduct an investigatory stop. Temple, 02-1895, p. 5, 854 So.2d at 860; State v. Chauvin, 06-362, p. 8 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 758. A police officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes, are factors that may also support a finding of reasonable suspicion for an investigatory stop. Chauvin, 06-362 at 8, 945 So.2d at 758. An individual's mere presence in a high crime area alone is insufficient to justify an investigatory stop. State v. Morton, 08-164 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 656. In addition, any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure. State v. Lewis, 00-3136, p. 4 (La.4/26/02), 815 So.2d 818, 820, cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211.
Upon review, we find the facts presented in this case were sufficient to provide the officers with reasonable suspicion for making the stop. The officers testified that the area where they first spotted the Defendant was a high crime area where they had made several drug arrests in the past. They saw the Defendant at approximately 8:00 p.m. They observed the Defendant and another individual loitering in front of a building posted with a no loitering sign. The Defendant was waiving or flagging down people. As they approached, the Defendant made "a quick-sweep[ing] motion as he was reaching for something under his shirt," turned and began walking away. Deputy Smith responded affirmatively, when asked if this alarmed him. Deputy Smith also stated that it raised his suspicion when the Defendant started walking away. Based on the foregoing, we find that the officers had sufficient knowledge of facts and circumstances to draw reasonable inferences based on their experience, establishing reasonable grounds to stop the Defendant.
Following the stop, Deputy Smith testified he conducted a pat-down of the Defendant for the officers' safety. Defendant contends that the officer had no reason to suspect that he had a weapon or that the officer was in any danger. Therefore, the pat-down, in which the narcotics and gun were found was improper, invalidating the seizure of the evidence as a result.
*653 An officer's right to conduct a protective frisk is codified in La.C.Cr.P. art. 215.1(B), which provides that "[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon." While it is true that an officer is never justified in conducting a pat-down for weapons unless the original investigatory stop itself was justified, a lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons. State v. Sims, 02-2208, p. 6 (La.6/27/03), 851 So.2d 1039, 1043; State v. Hunter, 375 So.2d 99, 101 (La.1979). Even after a lawful investigatory stop, a police officer may frisk the suspect only where a reasonably prudent person would be warranted in the belief that his safety or that of others is in danger. La. C.Cr.P. art. 215.1(B); Terry, 392 U.S. at 21, 88 S.Ct. at 1880. Therefore, the reasonableness of a frisk is governed by an objective standard. State v. Dumas, 00-0862, pp. 2-3 (La.5/04/01), 786 So.2d 80, 81.
The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a "substantial possibility" of danger. Id.; Hunter, 375 So.2d at 102. In determining the lawfulness of an officer's frisk of a suspect, courts must give due weight, not to an officer's "inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 21, 88 S.Ct. at 1880.
Under the totality of the circumstances, we find the officer had a reasonable, objective and particularized basis for conducting a pat-down frisk of defendant. The sole purpose of the limited protective frisk is to prevent harm to police officers. State v. Sims, 02-2208, p. 11 (La.6/27/03), 851 So.2d 1039, 1046; State v. Wade, 390 So.2d 1309, 1312 (La.1980). It is long established that drugs, guns and violence often go together, and thus this may be a factor tending to support an officer's claim of reasonableness. State v. Porche, 06-0312, p. 9 (La.11/29/06), 943 So.2d 335, 340. In this case, the officers were in a high crime area, more particularly, a high drug crime area. The possibility that a suspect could be carrying a gun was a reasonable inference to draw. They encountered the Defendant at night. The Defendant had turned to walk away upon spotting the officers and had made a quick maneuver with his hand under his shirt and toward his back. Under these circumstances, we find that the officer was warranted in the belief that there was a substantial possibility of danger. Therefore, we find no violation of the Defendant's rights in the officer's decision to pat-down the Defendant.
In commencing the pat-down, however, rather than starting at the Defendant's back, Deputy Smith commenced with the front pockets of Defendant's outer clothing. During the pat-down, he felt a large bulge in the Defendant's right front pocket which he admitted did not feel like a weapon. Deputy Smith also did not testify that the bulge was clearly identifiable as contraband. Deputy Smith retrieved the item from the Defendant's pants pocket and determined it was marijuana.
He then continued the search of the Defendant and felt a hard object in the Defendant's back waistband. Deputy Smith retrieved the hard object which was a 9-millimeter Luger.
The "plain feel" exception to the warrant requirement for the seizure of evidence allows an officer conducting a *654 legally valid pat-down search to seize contraband when the incriminating character of the object is immediately apparent to the officer without an additional form of search or examination to identify it as contraband. Minnesota v. Dickerson, 508 U.S. 366, 371, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993); State v. Boyer, 07-0476, p. 22 (La.10/16/07), 967 So.2d 458, 472. In Dickerson, the Court observed that although Terry entitled the officer to place his hands upon the defendant's jacket, the incriminating character of the object was not immediately apparent to the officer, and he determined the item was contraband only after conducting a further search, one not authorized by Terry or any other exception to the warrant requirement. Dickerson, 508 U.S. at 379, 113 S.Ct. at 2139. Because the further search of the defendant's pocket was constitutionally invalid, the seizure of the cocaine was also held unconstitutional. Id.
Similarly, in State v. Boyer, 07-476 (La.10/16/07), 967 So.2d 458, the Louisiana Supreme Court found that the search of the defendant in that case, pursuant to a Terry pat-down for weapons, exceeded its scope where the officer could not identify two small objects he felt in defendant's pocket, and did not think they were weapons, but nevertheless, reached into the pocket and removed the items to make a visual inspection.
In this case, Deputy Smith started the pat-down of the Defendant with his front pockets. He felt a bulge in the Defendant's pants pocket but testified candidly that he did not think it was a weapon. He also did not testify that he thought the item was contraband by its feel. Therefore, in accord with the foregoing jurisprudence, we find that his entry into the Defendant's pocket and retrieval of the item exceeded the scope of the otherwise valid Terry pat-down for weapons for the officer's safety.
As the officer continued the pat-down, he felt a hard object in the waistband of Defendant's pants at his back. This was the same location where the officer saw the Defendant quickly move his hand as he turned and began walking away. The retrieved item was a 9-millimeter Luger. We find the retrieval of the hand gun from the Defendant's waistband, pursuant to a Terry pat-down for weapons was within the parameters of the valid search and was, thus, legally obtained. At that point, the Defendant was placed under arrest and advised of his Miranda rights.
Upon the arrest of the Defendant, the officers were authorized to affect a complete search of the Defendant. Upon conducting such a search, the large bulge of marijuana in his front pants pocket would have been discovered. Therefore, we must consider whether the marijuana is admissible under the inevitable discovery rule.
Most recently, in State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, the Louisiana Supreme Court explained the inevitable discovery rule as follows:
One of the theories courts use in addressing "fruit of the poisonous tree" issues is the inevitable discovery rule. The inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because *655 both seek to avoid excluding evidence the police "would have obtained ... if no misconduct had taken place." Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence that "the information ultimately or inevitably would have been discovered by lawful means...." Id.; State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment...." Nix v. Williams, 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; State v. Vigne, 820 So.2d at 539.
Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement would have inevitably secured the evidence by lawful means, not simply that they could have. Thus, a mere showing that the police had probable cause for a search and could have secured a warrant from a neutral magistrate does not satisfy the doctrine, because it would effectively obviate the Fourth Amendment preference for warrants and reduce the exclusionary rule to cases in which the police lack probable cause. See United States v. Elder, 466 F.3d 1090, 1091 (7th Cir. 2006)("The usual understanding of that doctrine is that the exclusionary rule should not be applied when all the steps required to obtain a valid warrant have been taken before the premature search occurs [citing Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)].... If probable cause alone-without putting in train the process of applying for a warrant-were enough to invoke the inevitable-discovery doctrine, that would have the same effect as limiting the exclusionary rule to searches conducted without probable cause."); see also 6 LaFave, Search and Seizure, § 11.4, at 278-79 (Fourth Ed.) ("Circumstances justifying application of the `inevitable discovery' rule are most likely to be present if these [independent] investigative procedures were already in progress prior to the discovery via illegal means, as in Nix v. Williams, or where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later.").
State v. Lee, 05-2098 at 23-24, 976 So.2d at 127-128.
Applying these precepts to the facts before us, we find that the marijuana would have been inevitably discovered through legal means. Following the discovery of the gun in the Defendant's waistband, the Defendant was placed under arrest. A full search is permitted pursuant to an arrest, during which the marijuana would have been discovered.
In view of the foregoing, we find the officer's had reasonable suspicion for a Terry stop of the Defendant, and a Terry pat-down for the officers' safety, which lead to the legal discovery of a concealed weapon, valid arrest and full search pursuant thereto, during which the marijuana would have been constitutionally discovered. Therefore, we find no error in the trial court ruling denying the Defendant's motion to suppress the evidence. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant argues that the trial court erred in limiting his presentation of a defense of mistake of fact and/or law. More particularly, it is argued that his attorney was not allowed to examine potential jurors *656 during voir dire and to argue to the jury during his closing that even if they believed that the Defendant was found in possession of the gun, that the Defendant was unaware that he could not carry a gun ten years after his previous conviction. The Defendant claims there was a question of intent and, therefore, the defense wanted to argue its theory in order to show a lack of intent. The Defendant argues that the exclusion of the defense of mistake might have contributed to his conviction. Therefore, the exclusion was not harmless and the conviction should be set aside.
The State argues that the trial court did not prevent the defense from asserting its defense theory of mistake. Further, even if precluded it was not error because the charged offense is a general intent crime and, therefore, it was only required to prove that the Defendant was carrying a firearm. The State further argues that, pursuant to La. R.S. 14:17, ignorance of the law is not a defense to any criminal prosecution.
A review of the voir dire transcript reveals that while the trial judge sustained some State objections to defense procedures during voir dire, we find, after full review, that the trial judge did not prevent defense counsel from examining potential jurors concerning a defense of mistake (that the Defendant was unaware that he could not carry a gun ten years after his previous conviction, and that he did not possess the requisite intent to commit the charged offense).
Defense counsel was allowed to inform the prospective jurors that the State has "to prove to you that [the Defendant] was intentionally possessing a weapon within that ten-year cleansing period. And if [the State fails] to do that, even if [the Defendant] did possess the weapon, you have no alternative to [sic] find him not guilty." Then, defense counsel was allowed to ask the prospective jurors, "Does anybody have a problem with that?" Later, defense counsel informed the prospective jurors that the State had to prove to them that the Defendant "had a criminal intent to possess a gun less than ten years from his sentencing date or his probation date or his parole date that he had gone to jail. They have to prove his intent along those lines." Then, defense counsel asked the prospective jurors, "if [the State does not] do that, can you find [the Defendant] not guilty?" Subsequently, defense counsel again informed the jurors of his defense and questioned them, as follows:
[The State has] to prove that [the Defendant's] intention was to commit a criminal act. The element of the crime is that [the Defendant] intended to commit a criminal act, which would be to possess the gun, less than 10 years than [sic] his time of probation or sentence. And if they fail to prove that to you, that that [sic] was [the Defendant's] intent, can you find him not guilty? Can everyone do that?
The record reveals that the trial judge gave defense counsel sufficiently wide latitude to examine the prospective jurors regarding the defense, and to test their impartiality, competency, and prejudices. See, State v. Brashears, 04-1207 (La.App. 5 Cir. 4/26/05), 902 So.2d 536, in which this Court found that the trial court did not abuse its discretion in imposing restrictions on defense counsel's voir dire examination.
The Defendant also argues that he was restricted in closing arguments, however, he references no instances of such restriction and we have found none. During defense counsel's closing arguments, defense counsel stated:
The evidence that [the State] has to prove to you is that [the Defendant] had the gun, that [the Defendant] intended *657 to violate the law, and that [the Defendant] did violate the law, that [the Defendant] possessed [the gun] less than 10 years before he got off probation. But, [the State] presents no evidence. It's thoroughly impossible for you to determine whether [the Defendant] violated the law by having a gun before he got off of probation, because [the State] doesn't tell you that. [The State] hasn't proven [its] case.
Thus, after review, we find that defense counsel was allowed to argue to the jury during his closing that even if they believed that the Defendant was found in possession of the gun, that the State had to prove the Defendant intended to violate the law. Moreover, to the extent such a defense might have been restricted, we find no error. La R.S. 14:95.1, under which the Defendant was charged, is a general intent crime.[9]State v. Watson, 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 783. To sustain a conviction under La. R.S. 14:95.1, the State must only prove the status of the defendant as a convicted felon, that he possessed a firearm and that ten years had not elapsed since the date of completion of the punishment for the prior felony conviction. State v. Crawford, 03-1494 (La.App. 5 Cir. 4/27/04), 873 So.2d 768 (citing State v. Mose, 412 So.2d 584). Therefore, we find no erroneous restriction of the defense in either the voir dire examination or closing argument. This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920 regardless of whether Defendant makes such a request. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). Our review reveals the following.
The sentencing transcript indicates that the trial judge did not inform the Defendant of the period in which to file for post-conviction relief. While the commitment/minute entry indicates that the Defendant was informed that he had, "two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief," when there is a discrepancy between the transcript and the minutes, the transcript governs. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand the case and order the district court to inform Defendant of the proper prescriptive period for filing post-conviction relief by sending written notice of the provisions of La.C.Cr.P. art. 930.8 to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. State v. Strickland, 04-843, p. 17 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 896, writ denied, 05-0820 (La.6/17/05), 904 So.2d 683.
Accordingly, for the reasons provided, we affirm the Defendant's conviction for possession of a firearm by a convicted felon and his sentence to 13 years at hard labor without benefit of parole, probation or suspension of sentence and remand the case for the trial court to provide proper notice to the Defendant of the time limitations for filing an application for post conviction relief, as provided in La.C.Cr.P. art. 930.8, and to file written proof in the record of his receipt of the information.
*658 CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
EDWARDS, J., dissents with reasons.
EDWARDS, J., dissents with reasons.
I respectfully dissent from the majority's opinion in this matter. In my view, the defendant's motion to suppress was meritorious and should have been granted. While I do not quarrel with the law as set forth in the majority opinion, I disagree with the application of the law to the facts of this case.
The facts show that the defendant was standing in front of an apartment complex, which displayed a "No Loitering" sign, at about 8:00 p.m. The area was described as high crime in which officers had made prior drug arrests. The defendant was observed attempting to flag down cars for about five or ten seconds. As defendant began to walk away, officers noticed that defendant made a "quick sweeping motion under his shirt."
I find no articulated suspicion that the suspect was committing or about to commit an offense, a basic requirement to support a reasonable suspicion for the stop. The arresting officers testified that they saw nothing that looked like a drug transaction. The defendant, who was there only for a matter of seconds, merely walked away when he saw the police officers approach.
Clearly, a law enforcement officer has the right to temporarily detain and interrogate a person whom the officer reasonably suspects is committing, has committed or is about to commit a crime.[10] However, an un-particularized hunch based on the officer's subjective beliefs or attitudes instead of a completely objective evaluation of the circumstances is insufficient to establish reasonable grounds to stop an individual.[11]
I recognize that officers have the right to approach a citizen and engage in conversation even without reasonable suspicion of criminal activity. However, when there is no articulated suspicion of criminal activity, a citizen has the right to walk away. I find that, in this case, defendant was exercising that right. I believe that any evidence seized from defendant was the fruit of an illegal stop, and should have been suppressed.[12]
Accordingly, I would hold that the trial court erred in denying defendant's motion to suppress the evidence and I would vacate his conviction.
NOTES
[1] According to the bill of information, the Defendant previously was convicted of possession with intent to distribute cocaine, in case Number 95-1868, in the 24th J.D.C., in Jefferson Parish. The defense agreed to the stipulation offered by the State that the Defendant's prior conviction "occur[ed] in 1995, he was sentenced with [sic] three years probation."
[2] The October 3, 2006 transcript and minute entry indicate that the Defendant also filed a motion to suppress statement. The October 4, 2006 transcript indicates that the State stipulated that the Defendant's statement should not be admitted into evidence.
[3] Later in their trial testimony, both Officer James and Deputy Smith testified that, while subsequent photographs of the apartment building located at 2241 Alex Korman Boulevard did not show a no loitering sign on the building in front of which the Defendant stood, on the night of his arrest, it displayed a sign. Further, it appears that this portion of the testimony mistakenly refers to a no trespassing sign. Defense counsel actually asked Deputy Smith about a no trespassing sign. However, based on the whole record, it appears that defense counsel actually meant a no loitering sign.
[4] Officer James only testified that the Defendant was stopped for flagging down vehicles.
[5] See footnote four regarding the inadvertent reference to the sign as a no trespassing sign.
[6] The Defendant's trial for possession of marijuana was concurrent with his trial on the felony charge. The felony offense was a jury trial and the misdemeanor offense was a bench trial. The trial judge found the Defendant guilty of possession of marijuana. The Defendant was sentenced to six months in parish prison on that charge.
[7] The notice of appeal states the wrong sentencing date.
[8] In the present case, the Defendant raises the claim, for the first time on appeal, that the police lacked probable cause for his warrantless arrest. A new issue that has not been submitted to the trial court for consideration generally cannot be raised for the first time on appeal. State v. Darensbourg, 06-572, p. 3 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128, 1131, writ denied, 07-0317 (La. 11/9/07), 967 So.2d 495. However, in light of our findings on his other assigned errors, we note this argument is moot. The officers had reasonable suspicion to make the stop and the pat-down for officer safety, whereupon the weapon was found, giving them probable cause for the warrantless arrest.
[9] "General intent means that the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal." State v. Watson, 08-214 at 7, 993 So.2d at 783. "[O]nce the Defendant voluntarily commits the proscribed act, general criminal intent may be presumed." Id.
[10] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[11] State v. Gagnon, 01-1302 (La.App. 5 Cir. 4/10/02), 817 So.2d 167, 170.
[12] Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963).